UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


PRINCESS BLUE O/B/O
MARCUS K. BLUE

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NUMBER 06-863-RET-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, June 13, 2008.

                                              */s/ Stephen C. Riedlinger*
                                   STEPHEN C. RIEDLINGER
                                 UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PRINCESS BLUE O/B/O
MARCUS K. BLUE

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NUMBER 06-863-RET-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Princess Blue brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of a final decision of the Commissioner of Social Security (Commissioner), Michael J. Astrue, which terminated the supplemental security income (SSI) benefits for her son, Marcus K. Blue.[1]  Before the court is the plaintiff's petition for judicial review and appeal of the final administrative decision of the Commissioner.

Plaintiff filed an application for children's SSI benefits in July 1998 and was found disabled under Listing 112.02 effective January 1, 1999.[2]  Plaintiff underwent a continuing disability review in February 2002.  After completing the review, the Commissioner found that the plaintiff had experienced medical

---

[1] Hereafter, referred to as the plaintiff.

[2] Plaintiff's date of birth is April 9, 1996.  AR p. 22. Thus, the plaintiff was six years old at the time he was found no longer disabled.  Plaintiff was nine years old at the time of the ALJ's decision.

improvement, and as of July 2002 he was no longer disabled under the definition of disability for children. AR pp. 21-37. Plaintiff was notified of the decision that his disability ceased and he appealed the decision at the administrative level, and ultimately requested a hearing before an administrative law judge (ALJ). AR pp. 38-72. A hearing was held before the ALJ and the ALJ issued his written decision in January 2006. AR pp. 11-18, 277-303.

The ALJ found that the current medical evidence showed the plaintiff had experienced medical improvement in his condition since being found disabled. At the second step of the sequential children's SSI analysis the ALJ found that the plaintiff's diagnosed impairments of borderline intellectual functioning and attention deficit hyperactivity disorder (ADHD) remained severe. However, the ALJ determined at the third and final step of the analysis that these impairments did not meet any of the listed impairments found in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, Appendix 1, Part B, nor did they medically or functionally equal any listed impairment. On the question of functional equivalency, the ALJ concluded that the plaintiff had less than marked limitations in the domains of acquiring and using information, and attending and completing tasks, and no limitations in any of the remaining four domains of functioning. AR pp. 14-18. The Appeals Council denied the plaintiff's request for review on May 10, 2006 and the decision of the ALJ became the final decision of the Commissioner. AR pp. 4-8.

## Standard of Review and Applicable Law

The court's review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Harris*, *supra*. In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).[3]  Conflicts in the evidence are for the

---

[3] On judicial review under § 405(g), evidence external to the record is generally inadmissible, and the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v.*
(continued...)

Commissioner and not the court to resolve.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Effective August 22, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 changed the law for determining disability in childhood disability SSI cases.  Essentially, the changes eliminated the fourth step which required the Commissioner to complete an individualized functional assessment to determine whether a child's impairments were comparable in severity to those which would disable an adult.[4]

Under the new statute and regulations, an individual under the age of 18 is considered disabled if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i); *Harris*, 209 F.3d at 418.  A three step

---

[3](...continued)
*Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

[4] The elimination of the fourth step effectively returns the process for evaluating disability in children to that used prior to 1990 when the Supreme Court decided *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990).  *Harris*, 209 F.3d at 417-18.

sequential analysis is used to evaluate claims for children's SSI benefits.  These steps are: (1) Is the claimant engaged in substantial gainful activity? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the claimant's impairment meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1?  20 C.F.R. § 416.924(a)-(d).

At the third step, if a claimant's impairments do not meet or medically equal any listing, a determination is made as to whether the impairments result in limitations that functionally equal a listing.  20 C.F.R. § 416.926a(a).  Functional equivalency requires consideration of how the claimant functions in terms of six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do.  The six domains are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A claimant's impairments functionally equal the listings if they are of listing-level severity.  Impairments are of listing-level severity if the claimant has marked limitations in two domains, or an extreme limitation in one domain.  20 C.F.R. § 416.926a(d).

Limitation in a domain is "marked" when impairments interfere seriously with the claimant's ability to independently initiate, sustain, or complete activities.  Daily functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several

activities. Marked limitation is more than moderate, but less than extreme. Extreme limitations in a domain occur when a claimant's impairments interfere very seriously with the ability to independently initiate, sustain or complete activities. An extreme limitation means more than marked, and is also the rating given to the worst limitations. However, it does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(2)(i) and 3(i).

Under the regulations, children who are found disabled must periodically undergo a continuing disability review to determine if they are still eligible for payments based on disability. 20 C.F.R. § 416.994a. In a benefits termination proceeding, the Commissioner bears the burden of proof. *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir.1991). The Commissioner first evaluates whether there has been medical improvement in the claimant's impairments. If there has been medical improvement, the Commissioner then considers whether the impairments the claimant had at the time of the most recent favorable decision now meet, or medically or functionally equal the severity of the listing applicable at that time. If it does not, the Commissioner then proceeds to consider whether the claimant's current impairments are disabling under the same rules used to make the initial determination of disability. 20 C.F.R. § 416.994a and § 416.924(a)-(d). The Commissioner's decision that the claimant is no longer disabled will be affirmed so long as the decision is supported by substantial evidence. *Carey v. Apfel*, *supra*.

## Analysis

Plaintiff argued that he continues to meet the eligibility requirements of Listing 112.02 (Organic Mental Disorders). In the alternative the plaintiff contended that his impairments are functionally equivalent to this listed impairment because the evidence shows that he has marked limitations in the domains of both acquiring and using information and attending and completing tasks.[5] Plaintiff asserted that the ALJ's findings to the contrary are not supported by substantial evidence and must be reversed.

Review of the administrative record as a whole establishes that there is substantial evidence to support the conclusion that the plaintiff experienced medical improvement and that his disability ceased. Plaintiff's impairments no longer met the severity of a listed impairment, and the plaintiff had less than marked limitations in the domains of acquiring and using information, and attending and completing tasks. The information and reports in the record demonstrate that there is substantial evidence to support these findings.

Plaintiff's school records and evaluations showed that the plaintiff received special education services to address his speech and learning difficulties. AR pp. 119, 124-27. Plaintiff was also placed on medication for his ADHD. AR pp. 199-204, 215, 234, 276,

---

[5] Plaintiff did not object to the ALJ's finding that he had "no limitations" in the other four domains: interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. AR pp. 15-17.

295.     The evidence demonstrated that with these services and medication, the plaintiff was improving and progressing in the areas of his academic, cognitive, emotional and social functioning. During the 2001-2002 school year, the plaintiff's teacher reported that the plaintiff was functioning at an age appropriate level academically.    Plaintiff  did  not  exhibit  any  behavior  or disciplinary problems.  Nor did the plaintiff have any difficulty interacting with teachers, adults or his peers.  With regard to concentration, persistence and pace, the plaintiff was able to work independently, refocus if necessary, and timely/adequately compete his class work.  Plaintiff was also able to sustain an ordinary daily routine without special supervision.  AR pp. 109-128.

   The following school year, the plaintiff was in regular first grade classes, and continued to receive only one hour per day of special education services.  The teacher described some problems in acquiring and using information, but reported that the plaintiff's reading, math and written language were at a first grade level. Although the plaintiff had communication difficulties that resulted in some limitations in interacting and relating with others, the teacher indicated that in large part these problems were less than serious.   Plaintiff was able to play cooperatively with other children, make and keep friends, seek attention, express anger, ask permission appropriately, follow rules, and respect authority. Plaintiff had no limitations in the areas of attending and completing tasks, moving about and using objects, and caring for himself physically and emotionally.  AR pp. 151-58.

Toward the end of the 2004-2005 school year, the school system's pupil appraisal services reevaluated the plaintiff for special education services. AR pp. 243-74. The report noted that the plaintiff had not been retained in any grades and had no problems with attendance or behavior. Plaintiff continued to struggle with math, written and oral language, and organizational skills, but was functioning in the average range in word reading, reading comprehension and oral expression. Plaintiff's regular and special education teacher stated that the plaintiff was well-behaved, and maintained good peer relations, discipline, attendance and respect for authority. Plaintiff was making satisfactory progress in his speech therapy, but continued services in speech/language were recommended to address mild to moderate deficits in language/auditory processing skills. Modifications and adjustments in the regular classroom setting were recommended to accommodate the plaintiff's learning deficits. At the point of his reevaluation the plaintiff had passing grades in all of his classes. AR p. 260.

Further support for the decision that the plaintiff is no longer disabled is found in the 2002 reports of Dr. Charmaine Venters and Maxine Campbell-Flint, Ph.D. Dr. Venters noted that the plaintiff was under the care of a cardiologist, but has never taken prescribed medication for a heart murmur diagnosed in 2001. Plaintiff's physical examination was otherwise normal. Dr. Venters stated that the plaintiff was on medication for his ADHD and that the plaintiff's speech delay problems had resolved. AR pp. 215-17.

Campbell-Flint performed a psychological evaluation in 2002. The results of the WISC-III placed the plaintiff in the borderline range of intellectual functioning. At the same time Campbell-Flint noted that the plaintiff's academic performance was improving and demonstrated progress. She stated that the plaintiff was cooperative, able to concentrate, maintain attention and take care of his own activities of daily living. She observed no obvious sensory or motor difficulties, or deficits in the plaintiff's expressive/receptive speech. AR pp. 220-22. Campbell-Flint evaluated the plaintiff again in February 2005. Plaintiff was not on any medication for his heart, but he was still on medication for ADHD. He was compliant with his treatment which improved his attention and concentration. The 2005 test scores on the WISC-IV showed that the plaintiff fell in the borderline to average range of intelligence relative to the national normative sample. Plaintiff had a tendency to give up easily when a task presented a challenge to his intellectual functioning. However, overall the plaintiff was able to understand and follow directions, maintain the pace of the evaluation process and follow appropriate standards of behavior. AR pp. 234-36.

While there is some evidence in the record that could arguably support the plaintiff's claim, on judicial review it is not necessary that all of the relevant evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position it is not grounds for reversal of the Commissioner's decision. As long as the finding or decision was supported by

substantial evidence in the record as a whole it must be affirmed.[6] The evidence discussed above, and the record as a whole, clearly establishes that more than substantial evidence exists to support the conclusion that the plaintiff had experienced medical improvement, no longer met a listed impairment, and had less than marked limitations in two domains of functioning and no limitations in the other domains.  Therefore, the Commissioner's decision that as of July 2002 the plaintiff was not disabled should be affirmed.

### Recommendation

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g) the final decision of the Commissioner of Social Security which terminated and denied the supplemental security income (SSI) benefits of Princess Blue on behalf of her son Marcus K. Blue, be affirmed and this action be dismissed.

Baton Rouge, Louisiana, June 13, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[6] *See, Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254 n. 4 (5th Cir. 1972); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).